The next case today, number 2-1-1-2-1-4, Angel Forteza-Garcia v. United States. Will attorney for appellant please come up and introduce yourself on the record to begin. Good morning, your honors. May it please the court. AFPD, Franco Perez, and I am appearing today on behalf of the appellant, Angel Forteza-Garcia. May I reserve two minutes for rebuttal, please? You may. Thank you, your honors. The district court erred when it held that mail robbery under Section 2114 remains a valid 924C crime of violence predicate. This court should reverse that erroneous determination. And there are two features principally that compel that outcome in our view. The first one is that there is grievous uncertainty in this record about the nature of the conviction for which Mr. Forteza was convicted of. And the second reason is, and by that I mean, we don't know if it was a simple modality or an aggravated modality of the offense. Are you referring to the indictment in the charging document? So I'm referring, yes, your honor, to several documents. I think that in the indictment, I will acknowledge that perhaps this is an appendix 39. We see count one saying that the defendants aided and abetted each other. And it tracks the language of assault with the intent to rob. And also it goes on to mention the two other features of the aggravated portion of the Section 2114. And what we see there then is by the time that the change of plea hearing comes around and we look at the plea agreement, Mr. Forteza does not end up pleading guilty to count one. He only pleads guilty to count three, the 924J. And I will also acknowledge that it does track part of the language of count one. However, it includes the specific aggravators that were listed in count one. It does say it reincorporates. The district court treated him as having committed the aggravated compulsion, correct? The district court at the time of sentencing? Yes. I do believe that the court does look at some of the facts in the case, but it's not clear to me that when the judge is referring to the aggravated portion of it, that the court is actually looking to—I mean, it's looking at the facts of the case. I don't think that they matter in a sense of what the elements were or what the different components of conviction were. I'm just saying the district court sentenced on the understanding that he committed the aggravated component, correct? The district court—I would just have to push back slightly on it. So the district court, what it ended up doing was it mentioned the wounding. It mentioned the firearm. But it's not clear, at least to me from reading this record, if it was in relation to the 924J conviction itself, which also includes a deadly weapon, or if it's regarding the mail robbery, if it's referring to elements there. And so for that reason, our view is that that first ambiguity in the record means that we can't have tailor certainty. And the significance, if you're right on this, is that then the question of whether simple mail robbery is divisible or not becomes important because if it isn't divisible, then it can't qualify. Is that the idea? Right. If it isn't divisible, I don't think it may qualify. But again, there is that feature about this case that renders it, in our view, not a crime of violence. I also wanted to briefly address. Which was that feature? So that we don't know essentially which one of these means of the aggravated pushing, if there is that, was the basis of conviction. You mean if it's simple robbery, we don't know which of the three it was? If it's simple robbery, I mean, some of the documents do seem to signal that it was for the assault modality. And I know that the government has also acknowledged that the attempt at robbery modality is not a valid predicate by indicating that that portion is divisible. What do we do about the fact that the district court said he did it by robbing and wounding? Right. So then wouldn't robbing be not assaulting? Were you saying robbing could have meant simple robbery plus wounding, and then simple robbery would just encompass all three of those modalities, and we don't know which one? That's the idea? That's part of it, Your Honor. But even, I think, if it was predicated on the aggravated modality, we have, as in the previous case that was argued here today, those three features, the triad of aggravating circumstances that are listed in the portion of the statute that follows the semicolon, and they all seem to be means of an element rather than— Are you separately advancing the aiding and abetting objection as well? Yes, Your Honor. Maybe I should go there next. So for aiding and abetting, the government does make the same argument made in the previous case that we never requested a certificate of appealability on the question of accomplice liability or pre-Rosemond aiding and abetting. In district court, we did raise the issue. It was addressed by the district court, and the government has addressed it on appeal. I recognize that it is a jurisdictional requirement that we have to certify, but I think it is fairly comprised, and if you look at the COA motion that we filed, it does indicate that we are asking for COA on the issues raised in district court. Was the aiding and abetting theory ground raised in district court? Yes, Your Honor. It was raised. I will note that it was in a reply, and the government is arguing that we waived it. However, again, there seems to have been no prejudice. The court—the district court addressed the issue, so I think that— Well, if we got to the merits of it, how do you address— If I said—if I thought Taylor wasn't dispositive because it's dicta and it wasn't addressing this question, how am I supposed to understand what use of force as an element means? Because in one sense, even aiding and abetting mail robbery, if we're getting to the aiding and abetting issue, it's because we've concluded there is an element of mail robbery that itself has use of force as an element. So in one sense, literally, he aided and abetted in the context of an offense that has use of force as an element. It's just not his use of force. So why should we read use of force to be his rather than someone else? Right. I understand, Your Honor. So my view here is without Taylor, it becomes a little bit more of an uphill climb to prove that point. But again, I would just point the court back to Taylor in the language— Well, let's say Taylor wouldn't have come to the point if there wasn't some way to read the text to support that point. So do you have any affirmative argument about Taylor aside, why it would make sense to read the use of force the way Taylor read it, as a textual matter or a structural matter? Aside from Taylor, it's sort of hard to pinpoint any other authority because that is the one that we rely on primarily. But also, if you look at the facts of the case, when you look at what Mr. Fortesa was convicted of doing, he came in fairly late in the game. He did not participate in shooting the victim in this case. And so he aided toward the end of the— It occurred to me in 924C, every active verb is referring to something the defendant does. So it would be a little strange if all of a sudden we encountered one where it was an active verb that was referring to something somebody else did. Again, I would just point back to the Taylor decision. Thank you, Your Honor. Thank you, Counsel. Attorney for Appley, please introduce yourself on the record to begin. Good morning again, Your Honors. Still Josh Handel for the United States. I will jump right in on the Shepard documents in this case. So as the Supreme Court has told us, we can look at the charging document, transcript of plea colloquy and any explicit factual finding by the trial judge. Here, the superseding indictment charged Mr. Fortesa Garcia with wounding AVG, the custodian of said money, and putting his life in jeopardy by shooting several times AVG and causing his death. That is at appendix page 34. The plea agreement then explicitly referenced, realleged, and incorporated that portion of the indictment as supplying the predicate crime of violence for Mr. Fortesa Garcia's section 924J conviction. That is at appendix page 47, where it specifically identifies the crime, quote, set forth in count one herein, which is realleged and incorporated by reference herein as the predicate crime of violence. So I don't think there is any uncertainty about the fact that Mr. Fortesa Garcia's 924J conviction was predicated on an aggravated modality of federal property wrong. To turn back to aiding and abetting, just a couple of additional points. I take it we all now kind of agree that Taylor didn't explicitly say anything about aiding and abetting, it wasn't concerned with that theory of imputed liability. I will note that the one time that the Supreme Court has expressly addressed an aiding and abetting theory of imputed liability, the court took it as a given that aiding and abetting a crime of violence can serve as a crime of violence. Is that Duaney? This is Duaney Salvarez. Duaney's just the text of that is just completely different, because the question then is, is it a theft of that? That's not, was there a use of force? We're just asking, is it a theft of that? Then what they said is, well, generically, most jurisdictions would treat aiding and abetting as a theft of that. We'll treat it as a theft of that. Well, I think that's right, but if you look at the particular statute that identifies what a theft offense is under state law or how the courts have identified what a generic theft is, it's not talking about substantial theft. It's not talking about shared mens rea with the principal or the things that we think of as specifically applying to aiding and abetting liability. It's talking about taking something from someone else. Here, under, again, an expansive reading of Taylor, you might say, well, an aider and abetter didn't actually go out and snatch someone's purse off of their person, so there's no way that an aiding and abetting theory can support conviction for a generic theft offense. But, again, that's not how the Supreme Court looked at it in Duenas-Alvarez. That's the only word that we have from the Supreme Court on aiding and abetting liability, and I don't think we can kind of pick apart some maybe fuzzy language in Taylor to suggest that they have, you know, certainly they haven't overruled that sub silencio, and they also haven't abrogated. The key thing is that what defines this being the thing that's going to cause the 924C to kick in, in Congress's view, is the use of force. And so I guess that's just what we're – what's causing me the difficulty, which is, you know, did they mean to pick up defendants who didn't use force but aided others in doing? And Duaney doesn't seem to help all that much with that question. Because the text is it's a person who may be prosecuted in a court of the United States for the crime of violence. So I guess I go back from the last argument. Is that aider and abetter being prosecuted for the offense of 2114, or are they being prosecuted – is aiding and abetting actually not being prosecuted for that offense but some other thing that then brings in a punishment that the other statute provides? Right. So as Your Honor pointed out, I believe, during the last argument, we don't ever charge people as just having done an 18 U.S.C. Section 2, right? Correct. And as an AUSA, I never did. But now I'm thinking, why didn't I? And so I guess that's the question. Right. I mean – You would never do just U.S.C. 2. What you would do is aiding and abetting 2114. That's the offense. And I understand in the shorthand we always say, well, that's just treating them as the principal, but that's not actually what 2 says. Well, right. And I think when we're looking at trying to figure out what Congress was doing in 924C and they were saying someone who could be held liable for the offense or whatever the precise text is, I think here we have someone who is being held liable for the offense of aggravated postal robbery. They're just being held liable for that offense by way of an aiding and abetting theory. I mean – and, you know, perhaps you find that to be an unsatisfying legal fiction. I will note that this court has previously adopted it, as have eight other circuits. And I'm not aware of any court to go the other way. But, you know, I think that has to be the theory. And that was also the theory underlying Duenas-Alvarez when they were looking at – again, I recognize it's a little bit different. But they were looking at how does aiding and abetting factor into when we're particular state statutory offenses against generic offenses. And there we didn't require that the aider and abetter have actually used force, have actually snatched a purse, or actually assaulted someone. Because if you think aiding and abetting is not the same offense, then it does start to feel like Taylor, right? You can commit that offense and be guilty of it without yourself having engaged in any violence, threat of violence, or attempted violence. Let's pretend this is under Rosamond. You just shared someone else's intention, and they did it, and you were okay with them doing it, and you're going to help them, but you didn't do it. And what Taylor is getting at is in an attempt situation, you were going to use force if you did the robbery, but when you were casing the bank, they caught you. So what you intended didn't matter. It's what you did. And that seems to align with what we're saying here. Just if I'm following, or maybe you can just address this. In Duenas-Alvarez, the question is textually, is it a theft offense? That's just a different question than was there a use of force in committing the offense. That second question raises the issue, whose use of force? The question, is it a theft offense, just is a different issue. It doesn't raise that question inherently. Your Honor, I agree it's different, but I do think it's analogous. Because when we are looking at what is theft, what is generic theft, courts have gone through and they've identified generic theft has X, Y, and Z elements. It requires the taking. If I followed it, it would be something like if this instead said, using a firearm in connection with a theft offense instead of a crime of violence. And then it said a theft event involved the taking of blah, blah, blah. You would say Duenas-Alvarez would tell us we have to come out the same way Duenas-Alvarez came out. Yes. And so this is no different than that. Right. I mean, at least until we get clearer guidance from the Supreme Court, I think that you're bound to that and obviously this court is also bound to its prior panel decision in Garcia-Ortiz. Unless there are further questions, we will respectfully request that you affirm. Thank you. Thank you, Counsel. Will Attorney for Appellant please reintroduce yourself on the record? You have a two-minute rebuttal. Good morning once again, Your Honors. Franco Perez for the Appellant and head for Garcia. Just very briefly, I wanted to make one point with regard to Duenas-Alvarez. And as Judge Barron pointed out, the question there was whether this state offense, theft offense, or aiding and abetting a theft offense was generic theft. And so nothing really in Duenas-Alvarez clashes with what we have here, which is whether the defendant actually used violent force in committing the crime or, excuse me, if the offense requires the defendant to. But why isn't it the same? In that instance, the question was did the defendant commit a theft offense, right? Right, Your Honor. And then it concludes, yes, it did because aiding and abetting is a theft offense. And I think the government's logic is, well, why would you say it is if the defendant didn't commit the theft? Yet Duenas-Alvarez says, even though the defendant didn't commit the theft, we treat it as a theft offense the defendant committed because he aided and abetted it. And why wouldn't that same logic mean with respect to a crime of violence? Did it have a use of force? Well, the defendant didn't use force, but we treat it as a crime of violence because he aided and abetted an offense in which someone else used the force. What's wrong with that logic? Again, I think it's because the statutory text uses the word person or defendant, and so I think that's what should guide the analysis. Justice Thaler returned it to the hands of the individual defendant, and so too should this Court with regard to aiding and abetting this offense. If the Court has no further questions, we'll rest on our breaks. Thank you, Counsel. That concludes arguments in this case.